[No. 2836.]

## GALLEGOS v. MIERA

### [Rehearing Denied May 22, 1923.]

#### SYLLABUS BY THE COURT.

(1)　In the absence of a statute so providing, mere irreg-
ularities in the manner of conducting an election, or making
returns thereof, will not destroy the validity of such election,
nor the probative value of the ballots cast therein as evi-
dence upon the trial of a contest of such election.　P. 570.

(2)　The findings of the trial court, which are supported
by substantial evidence, will not be disturbed on appeal.
P. 572.

(3)　In the absence of proof of fraud on the part of the
election officers, sufficient to invalidate the returns or to
cast discredit upon the ballots the testimony of individual
electors concerning the kind and condition of the ballots
cast by them is inadmissible.　Under this rule a party to an
election contest is not entitled to break the seals upon certain
ballots to ascertain the respective numbers thereof, in order
to investigate and ascertain how such electors so casting such
ballots voted.　This would be futile inasmuch as evidence
thereof would be inadmissible.　P.572

Appeal from District Court, Sandoval County; Hickey, Judge.

Election contest by Luciano Gallegos against Manuel Miera. From a judgment for contestant, contestee appeals. Affirmed.

Summers Burkhart, of Albuquerque, for appellant.

O. O. Askren, of East Las Vegas, for appellee.

### OPINION OF THE COURT.

BRATTON, J. This is an election contest growing out of the general election held in Sandoval county on November 7, 1922. The parties hereto were rival candidates for the office of county school superintendent of that county; the contestant being the nominee on the Republican ticket, and the contestee being the nominee on the Democratic ticket therefor. Upon the face of the returns, as made by the election officers, the contestant received 1,144 votes, and the contestee received 1,179 votes, thereby giving to the contestee a majority of 35 votes. The contestant challenged the correctness of the returns made from precincts Nos. 3, 5, 6, 7, 8, 9, 10, 14, 15, 17, and 18, and charged that such returns were incorrect; that in fact he had received a majority of the votes cast by the electors of said county for such office. He prayed that a recount of the ballots in the named precincts be had, and that he be awarded the office.

By answer the contestee denied that the contestant had received a majority of the votes so cast, and pleaded as an affirmative defense that the ballots from the precincts in question had not been wrapped, tied, signed, sealed and indorsed by the election officers, as required by law; that the ballot boxes from the said precincts had not been sealed as required by law; that on November 13, 1922, the board of county commissioners of Sandoval county failed and refused to canvass the returns of said election, as made by the election officers, and declare the results therefrom, but wrongfully and without authority of law one P. F. Armijo, county

clerk of said county, in whose custody the ballot boxes had been for several days prior thereto, without direction from, but with the acquiescence of, said board, and in violation and disregard of the advice of the district attorney, opened said ballot boxes, and that the board of county commissioners counted the ballots contained therein; that said board of county commissioners then declared the contestant to have been elected and issued to him a certificate of election; that following this a writ of mandamus was issued by the district court of said county directing and commanding said board to canvass the election returns, as made by the officers thereof, and to declare the results therefrom; that pursuant thereto said board duly convened, revoked the certificate previously issued to the contestant, canvassed the returns from the face thereof, and declared the contestee to have been elected and issued to him a certificate of election.

The trial court permitted the ballot boxes from the precincts in question to be opened; the ballots to be introduced in evidence, and a recount thereof was had, which resulted in a finding that the contestant had received a total of 1,174 votes, and that the contestee had received a total of 1,158 votes, thereby giving to the contestant a majority of 16 votes. He was accordingly declared to have been elected and was awarded the office.

The first question presented concerns the action of the trial court in admitting the ballots in evidence and of recounting the same. It is contended by the contestee that there is no evidence of any fraud or misconduct on the part of the election officers in the conduct of the election, and further that it affirmatively appears from the evidence that the provisions of law with regard to the method and manner of making the returns, of transmitting such returns and ballot boxes to the county clerk, and in the preservation thereof have not been substantially complied with.

By section 1, c. 91, Laws 1919, it is made the duty of the judges of election, after completing the count of

the ballots, to wrap and seal them in a securely tied package, to write on the outside thereof the number of the precinct and the name of the county in which they were cast, and each judge is required to sign his name on the outside of such package, after which the ballots, in that condition, shall be placed in the ballot box. This statute is in the following language:

"After the judges of election shall have counted the ballots as provided by section 2022 of the Codification of 1915, they shall wrap said ballots in a securely tied package and seal the same, writing thereon, on the outside, the number of the precinct and name of county in which they were cast and seal the same, and each judge shall sign his name on said package, after which said ballots shall be placed in the ballot box as provided in said section."

Section 1, of chapter 34, Laws 1915, provides that the election officers shall transmit the ballot boxes, securely sealed, by registered mail or express to the county clerk, said section being in this language:

"The election officers of every precinct in the state, at every election at which any candidate for a state or county office, the office of the United States Senator, Representative in Congress, district judge, district attorney or member of the Legislature is voted for, or at which any constitutional amendment, or other proposition or question general in character, is voted upon, shall within twelve hours after the closing of the polls, forward to the secretary of state by registered mail or express, in a sealed wrapper or package, one poll book, properly filled out and signed, * * * and inclosed in a sealed wrapper or package—not in the ballot box—to the county clerk of their county. They shall likewise forward the ballot box, securely sealed to the county clerk."

And by chapter 107, Laws 1921, it is made the duty of the county commissioners, at the time of canvassing the returns of an election, in the presence of the county chairman of each political party, which is represented on the official ballot used at such election, if they, or any of them, desire to be present, to remove said ballots from the box and without removing the wrapping or breaking the seal thereon, to wrap in a securely tied package or packages all ballots cast at such election, and after marking the name of the county and the number or numbers of the precincts at which they were

cast, to deliver them to the county clerk, whose duty it is to preserve them in that condition until the time within which any action could be instituted which might involve a recount thereof has passed, and to then burn the same. Should any action be brought which might involve a recount of such ballots, it is made the duty of the clerk to preserve them subject to the orders of the district court. It is made a penal offense for such clerk or any other person without lawful authority to open or inspect such ballots, or to conspire with others to have the same done. Thus a complete system for the preservation of the ballots and for the maintenance of their secrecy from the time they are cast by the electors is provided.

It is here shown that some of these provisions of law were not complied with. In the precincts in question the election officers did not wrap, tie, seal, sign, and indorse the ballots as required by law, but on the contrary, after completing the count thereof, they put them in the ballot box loose. The ballot boxes were not sealed with sealing wax, or anything similar thereto. These boxes are shown to be patent, tin boxes, specially designed for use as ballot boxes in elections. They are cylindrical in form, with a slot in the door for the purpose of there inserting the ballots. There appears to be two duplicate keys for each ballot box, one of which was sent to the election officers, and the other retained by the county clerk. After the ballots had been placed in the boxes, the keys which the election officers had were placed inside these boxes with the ballots, and the boxes were then locked with a spring lock from the outside. It further appears from the evidence that some of the boxes were sent to the county clerk by a messenger, who was neither a judge nor clerk of the election. When the boxes were deliverd to the county clerk they were placed in a room in the second story of the courthouse at Bernalillo behind a locked door; the duplicate keys which were in the possession of the county clerk were kept in a locked safe in his office.

It is contended by the contestee that the county clerk

was a strong Republican partisan; that his partisanship reached the extreme of his opening such boxes in the presence of the commissioners without their direction, but with their acquiescence, and that, when the district attorney advised such commissioners that they had no legal authority to so open such boxes and count such ballots, the said clerk took issue with the district attorney and produced and read to the commissioners what purported to be a law authorizing them to so count the ballots. In this connection contestee contends that these facts, coupled with the additional fact that said clerk had possession of such ballots for several days prior to the time the commissioners so counted said ballots, constituted circumstances which make it possible that such ballots may have been violated.

[1] The failure of the election officers to wrap, tie, seal, and sign the ballots before placing them in the ballot box as required by law; their failure to seal the boxes with sealing wax, or some similar device, and their failure to deliver said boxes in person or by registered mail or express, are mere irregularities which, in the absence of fraud or evidence of a change in the result, do not necessarily destroy the validity of the election nor the probative force of the ballots as evidence. The underlying object and purpose of an election are to obtain the will of the public upon a given issue, or the selection of persons to hold public office, and when the voice of the majority of those participating has been thus obtained, it will not be disturbed nor destroyed by reason of technical irregularities in the manner of conducting the election, or of making the returns thereof. These are matters of detail, which, in the absence of some statute so providing, do not affect the result. Carabajal v. Lucero, 22 N. M. 30, 158 Pac. 1088; Montoya v. Ortiz, 24 N. M. 616, 175 Pac. 335, and authorities there cited.

The facts involved in this case are similar in many respects to those involved in Montoya v. Ortiz, supra. There the boxes were not returned as required by law. On the contrary some of them were sent by Wells

Fargo Express to the secretary of state.  After keeping them for an unknown period of time they were returned by the same means to the county clerk, who afterwards placed them, for safekeeping, in the First Savings Bank & Trust Company of Albuquerque.  One of the boxes was taken to the county clerk by a messenger, who was neither a judge nor clerk of the election.  It was held that the ballots were not admissible because there was no evidence that they had not been changed or violated while in the possession of these unauthorized persons and agencies.  It was there declared that, when ballots are shown to have been in the possession of an unauthorized person or agency, the burden shifts to the person tendering them in evidence to show that they were not violated or changed while in such possession.  Upon this subject the court said:

"As to the rejection of the recount made by the board of county commissioners, it is sufficient to say that upon the state of the evidence the court properly rejected the recount. The rule is well settled that, where it is shown that the ballot boxes have been in the custody of parties not entitled thereto, the burden rests upon the contestant to show that during such time the ballot boxes were not tampered with.  In this case the contestee showed that the ballot boxes for a time had been in the posession of the secretary of state and of the Wells Fargo Express Company, and no evidence was introduced to show that during such time the integrity of the boxes was preserved.  The contestee unnecessarily assumed the burden of showing that the boxes had been tampered with in this case."

In this case, however, the messenger who delivered such boxes to the county clerk testified that they were not opened, nor the ballots changed or violated while they were in his possession, and the clerk testified in positive terms that the boxes were not opened nor the ballots changed nor molested in any form after they were delivered to him and prior to the time of the count by the board of county commissioners.  Manifestly, therefore, these became issues of fact to be determined by the trial court.  Upon the evidence the court found:

"That there was no fraud practiced by any of the election judges or clerks or by any official who at any time had

custody of the ballots in question, and further finds that the ballots contained in the ballot boxes of the various precincts involved in this contest are the ballots as presented to the judges and clerks of said election by the voters, and that said ballots were not tampered with or changed."

[2] This finding being supported by substantial evidence, under the uniform and repeated declaration of this court will not be disturbed on appeal.

[3] It is lastly contended that the court erred in refusing to permit the contestee to break the seal upon the upper left-hand corner of certain ballots which concealed the respective numbers thereof, so that he might investigate and determine how the several electors casting such ballots had actually voted, and whether or not such ballots had been tampered with or changed in any manner. It could serve no useful purpose for the contestee to ascertain these facts, unless he could be permitted to produce such electors and prove by them how they had voted. To merely ascertain these facts and not be permitted to prove same would be futile and of no avail. It has been held, and is now the declared law of this state, that evidence of electors concerning the kind and character of ballots they actually cast is not admissible, except in cases of illegal or disqualified voters, or in cases where fraud on the part of the election officers sufficient to invalidate the returns or to cast discredit upon the ballots is shown. No fraud or corruption sufficient to affect the validity of the election having been shown, and there being no issue with regard to the qualifications of any of the electors, the trial court correctly refused to permit the seals to be broken and the number of the ballots revealed. Carabajal v. Lucero, 22 N. M. 30, 158 Pac. 1088, supra, wherein it is said:

"We hold that the evidence of a voter as to how he voted at an election is incompetent in a contested election case, in the absence of proof establishing fraud or corruption on the part of the election officers, sufficient to invalidate the election returns and the original ballots."

This rule was again announced, although it may well

be said to be dictum, in Montoya v. Ortiz, 24 N. M. 616, 175 Pac. 335, supra.

There being no error in the record, the judgment should be affirmed, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.