[No. 3460.   Oct. 4, 1930.]

BRYAN v. BARNETT.

[292 Pac. 611.]

W. C. Whatley and J. Benson Newell, both of Las Cruces, and Gilbert & Hamilton, of Santa Fe, for appellant.

J. C. Gilbert and J. B. McGhee, both of Roswell, C. C. Merchant, of Capitan, and J. O. Seth, of Santa Fe, for appellee.

OPINION OF THE COURT

WATSON, J.

This is an election contest instituted under 1929 Comp. § 41—601 et seq., involving the office of county assessor.

According to the canvass the contestant received 1,163 votes. His opponent received 1,166 votes and the certificate of election. As the result of rulings of the trial judge on the numerous contentions of illegality of ballots, the contestant was left with 1,144 votes and the contestee with 978. Judgment was entered canceling the certificate of election, ousting the contestee from office inducting the contestant thereon, and declaring (pursuant to a stipulation which we have not found in the transcript) that con-

testant was entitled to the emoluments only from the date of the judgment. The contestee has appealed.

■ One hundred and sixty-four absentee ballots counted and canvassed for appellant were thrown out on a holding of the learned trial judge that the statutory provisions for absentee voting (1929 Comp. § 41—333 et seq.) are unconstitutional. This question has been ably argued here; but before reaching it we must pass upon appellant's contention that it is not before us because not properly raised below. Appellee did not mention it in the notice of contest, or in the reply. It was raised first at the trial, long after the pleadings had been settled, after considerable evidence had been taken, and then by motion for a conclusion of law that all absentee ballots should be excluded because of the unconstitutionality of the statute.

Appellee contends that his notice of contest was sufficient to raise the question and to support his motion. He urges that an election contest "is a special proceeding between private persons, is governed solely by our election contest law, and that the rules of our code of civil procedure and the ordinary rules of pleading do not apply." He cites Bull v. Southwick, 2 N. M. 321; Vigil v. Pradt, 5 N. M. 161, 20 P. 795; Gonzales v. Gallegos, 10 N. M. 372, 62 P. 1103, and might have cited Crist v. Abbott, 22 N. M. 417, 163 P. 1085; Gallagher v. Linwood, 30 N. M. 211, 231 P. 627, 37 A. L. R. 664; and Hannett v. Mowrer 32 N. M. 231, 255 P. 636. This is no doubt the correct rule. We are to consult the statute as to the procedure, and it must be strictly followed. Gallagher v. Linwood, supra.

It is prescribed:

"There shall be no other pleading except the notice, answer and reply, and issues of both law and fact shall be made thereby."

Section 41—609. This seems plainly to contemplate that the issues between the parties upon which the cause is to be decided, both of law and of fact, are to be determined by these pleadings. Even by amendment the issues could not be changed after the specified time for pleading had expired. Wood v. Beals, 29 N. M. 88, 218 P. 354.

Long after this time had expired, during the actual trial, by a mere motion for a conclusion of law, it was first suggested that the absentee voters provisions of the Election Code were unconstitutional.

But appellee points to section 41—604, reading as follows:

"The notice shall specify the grounds upon which the claim of the contestant is based, and if he claims that illegal votes have been cast or counted for the contestee, he must specify the name of each person whose vote was so illegally cast or counted, the precinct or election district where he voted, and the facts showing such illegality."

He contends that by this section he was required not to plead the unconstitutionality of the statute, but merely to allege the facts from which that result would follow. He urges the analogy of our statutory complaint in a suit to quiet title, wherein it is sufficient to allege that the plaintiff is the owner of the property, which allegation will permit him to prove any source of title. He cites Oliver v. Enriquez, 17 N. M. 206, 124 P. 798, where we held that such pleading was sufficient; but that, if the plaintiff did attempt to set forth the derivation of his title, he would be held to such allegations; which, if insufficient, would not support a judgment.

If the analogy be correct, it will prove fatal to appellee's contention. We need not here hold that it is necessary for a contestant to set forth in his notice the exact legal theory upon which he claims that votes were illegal, if he states facts necessarily so resulting. We may assume that it would have been sufficient had appellee alleged that certain specified ballots were illegal because not cast by the voters personally. But when, as here, the contestant specifies that the illegality of the absentee ballots consists in various failures to comply with the statute, amounting to irregularity and fraud, we must consider that he tendered an issue of law, not as to the legality of absentee voting, but as to the legality of certain practices in attempting so to vote.

So, the constitutionality of absentee voting is not before us. This cause must be decided and the rights of these

parties determined upon the theory that the statute is constitutional.

The next question arises upon the throwing out of 13 absentee ballots cast, counted, and canvassed for appellant because the applications were not personally signed by the several voters. The controlling statutory provisions are:

"Any registered elector who expects to be absent * * * may cause to be mailed or presented to the county clerk an application signed by him for an official ballot to be voted at said election."

1929 Comp. § 41—333.

"Upon receipt of such application, the clerk shall immediately file the same and mail or deliver one official ballot as requested in said application *to the said elector himself but not to anyone else.*"

1929 Comp. § 41—334.

The first section quoted contains also the form of the application. The italicized words in the second section were not in it when the election here involved was held. They were added by amendments. Laws 1929, c. 117, § 3.

. Appellee defends the ruling on the theory that the words "signed by him" are a mandatory requirement, and that the elector's failure to sign the application invalidates his ballot. Appellant's position is that the requirement is directory.

Fraud is not here involved. The ballots must be deemed to have been regularly marked and cast by and on behalf of duly qualified electors. Are they void for failure of the electors to sign the application? Counsel for both parties urge considerations of public policy. Whether the requirement be held directory or mandatory, it seems that absentee voting, as regulated by our statute, offers opportunities for fraud. We do not discuss these contentions since they do not seem to be controlling. It was early urged by Mr. Justice Baker, in a dissenting opinion, that the way to "secure honest elections" was to "make unlawful ballots unlawful." Esquibel v. Chaves, 12 N. M. at page 513, 78 P. 505, 515. But this view did not then prevail, nor has it since. The exact question here presented

has not previously arisen in this jurisdiction. Yet principles have been established which seem to control its decision.

As a basic proposition the law favors the right to vote and seeks to give effect to the expressed will of the electorate. It upholds the validity of votes cast and of elections held, without fraud, though irregular. Esquibel v. Chaves, supra; Carabajal v. Lucero, 22 N. M. 30, 158 P. 1088, 1090; Montoya v. Ortiz, 24 N. M. 616, 175 P. 335; State ex rel. Read v. Crist, 25 N. M. 175, 179 P. 629, 630; State ex rel. Walker v. Bridges, 27 N. M. 169, 199 P. 370; Gallegos v. Miera, 28 N. M. 565, 215 P. 968, 990; Wright v. Closson, 29 N. M. 546, 224 P. 483.

As to whether regulations or requirements are mandatory or directory, such expressions as these are found in our decisions:

"Provisions regulating the exercise of the right (to vote), therefore, are to be interpreted as directory rather than mandatory, unless the language used compels a different determination."

State ex rel. Read v. Crist, supra.

"The authorities uniformly hold that statutes regulating the mere mode of conducting elections are directory, and that any departure from any prescribed mode will not vitiate an election if the irregularity does not deprive any legal voter of his vote or admit a disqualified voter to vote, or cast uncertainty on the result, and has not been occasioned by the agency of a party seeking to derive benefit from it."

Carabajal v. Lucero, supra.

In this latter case the court quoted from McCrary on Elections, § 228, as follows:

"Those provisions of a statute which affect the time and place of the election, and the legal qualifications of the electors, are generally of the substance of the election, while those touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, are directory."

Registration of voters is calculated to prevent fraud, yet the requirements were held to be directory. State ex rel. Walker v. Bridges, supra. It has since been provided that "no ballot of any unregistered person shall be counted or canvassed." 1929 Comp. § 41—209.

The use of spurious ballots is an historic mode of accomplishing fraud. But the provisions for the use of official ballots were held directory in Esquibel v. Chaves, supra. Only when the Legislature expressly provided that no such ballots should be cast, counted, or canvassed, were they considered mandatory. State ex rel. Read v. Crist, supra.

The provisions for wrapping and tying ballots, placing them in the box, and sealing the latter are safeguards against fraud, but held to be directory, and their non-observance not to "destroy the validity of the election nor the probative force of the ballots as evidence." Gallegos v. Miera, supra.

The erroneous election proclamation in question in Wright v. Closson, supra, no doubt misled many electors and prevented them from voting. No better means could be devised to accomplish wholesale fraud, yet the irregularity, as it was deemed in the absence of a showing of fraud, did not defeat the election.

Thus it seems that this court has made it extremely plain that such regulations of electors and of voting are directory unless expressly made mandatory. Such was the well-settled rule when the present Election Code was adopted. The Legislature did recognize the necessity of providing that ballots of unregistered voters should not be counted or canvassed. It did not so provide with respect to the ballots of absentee voters who had failed to sign applications for them.

Appellee contends that this case is distinguishable in principle from those which we have cited. There, he urges, the regulations restricted the right to vote, but here there is an enlargement of the right to vote upon conditions precedent. We are not impressed with the suggestion. The principle of absentee voting was adopted as our public policy. Thereupon the right became as sacred, as much to be protected and favored by the courts, as the right of voting by personal presence. We see no reason why the ballot of a qualified elector should be thrown out in the one case if not in the other.

What we say here is not to be taken as authority to county clerks to issue ballots to be voted by absentees, except upon applications signed by them. The law clearly requires such applications. A failure to observe that requirement no doubt opens the door to fraud, but that is not the question here. We merely hold that under the present statute the qualified elector who has thus improperly obtained his ballot shall not lose his vote because of the irregularity.

The correction of the two errors pointed out restores to appellant 177 votes, making his total 1,155, and puts him 11 votes ahead of his opponent. He presents other contentions of error. We need not consider them, since, however we might decide them, the result of the election would be the same.

The judgment must be reversed. The cause will be remanded, with direction to the district court to set aside its judgment and to enter such judgment for appellant as he may be entitled to under the statute, the stipulation, and this opinion. It is so ordered.

BICKLEY, C. J., and CATRON and SIMMS, JJ., concur.

PARKER, J., did not participate.