81 N.J. Super. 579 (1963)
196 A.2d 278
IN THE MATTER OF THE APPLICATION OF GEORGE M. GOULD FOR A RECOUNT AND RECHECK OF THE VOTES CAST IN THE ELECTION HELD IN THE BOROUGH OF MIDDLESEX ON NOVEMBER 5, 1963.
Superior Court of New Jersey, Law Division.
Argued and Decided December 13, 1963.
*580 Mr. Philip Blacher for applicant George M. Gould (Messrs. Rafferty and Blacher, attorneys).
Mr. C. Eugene Godlesky for Charles S. Judson.
HALPERN, A.J.S.C.
This is an election case stemming from a recount under N.J.S.A. 19:28-1 and a contest under *581 N.J.S.A. 19:29-1. The case has been pretried and the facts essential to a determination on the merits have been stipulated.
Charles S. Judson and George M. Gould were candidates for the office of mayor for the Borough of Middlesex in the general election held on November 5, 1963. As a result of the recount Judson received 2,077 votes and Gould received 2,076 votes. There remain uncanvassed two absentee ballots, one a military service ballot cast by Major Charles Gilroy, and the other a civilian absentee ballot cast by Catherine McDermott. These two ballots were rejected by the Middlesex County Board of Elections. The issue before me is whether either or both ballots should be counted for Gould for whom they were cast.
The parties have stipulated that Gilroy, who was stationed in Okinawa, had qualified to vote by military service ballot, and that McDermott had qualified to vote by a civilian absentee ballot due to a physical disability which existed when she applied for her absentee ballot and continued past November 5, 1963.

GILROY'S BALLOT
Gilroy signed his military ballot-certificate in the proper place designated for a military service voter. However, he took his own oath and also signed the jurat. N.J.S.A. 19:57-17 provides that upon the flap of the envelope sent to the absentee voter there shall be printed a certificate to be signed by the voter whereon he certifies to certain factual data. Beneath the voter's signature is the following jurat which, in my opinion, was intended for use by the ordinary non-commissioned service man:
 "Sworn and subscribed to before me this ____ day of ____, A.D.
 ____ at ____ in the State or Country of ____.
 __________________________________________
 (signature and rank of commanding officer)
Said certificate shall be sworn to before the military service voter's commanding officer * * *."
*582 N.J.S.A. 19:57-23 provides that the certificate shall be sworn to "before a commissioned officer, noncommissioned officer, or petty officer in the Armed Forces of the United States * * *."
The instructions on the ballot sent to Gilroy read: "3. Complete the certificate attached to the flap of this envelope. 4. Ask any commissioned officer to witness your signature." Beneath Gilroy's signature was a jurat which contained a line for the witness to sign, and beneath the line appeared the following: "(Signature and Rank of Petty, non-commissioned or commissioned officer)."
The form provided for in N.J.S.A. 19:57-17, as set forth above, and the provision as to who may take the jurat contained in N.J.S.A. 19:57-23, were originally enacted in 1953 and have remained the same to the present date. Gilroy contends that there is a discrepancy between the requirements of N.J.S.A. 19:57-17 and 19:57-23 as to who must take the jurat, and, therefore, under a liberal construction of the election laws, N.J.S.A. 19:57-3, he should not be deprived of his vote. Under either statute it is crystal clear that the Legislature intended that the voter's signature be sworn to before another person. To sanction a person's taking his own jurat is completely foreign to our system of jurisprudence. Gilroy's attempt to do so is a nullity. N.J.S.A. 41:2-1; 67 C.J.S., Oaths and Affirmations § 5a; Philips v. State, 5 Ga. App. 597, 63 S.E. 667 (App. Ct. 1909); Asher v. Sizemore, 261 S.W.2d 665 (Ky. Ct. App. 1953).
Gilroy's argument that he was confused as to who could take his affidavit has a very hollow ring. I take judicial notice of the records in the Middlesex County Clerk's Office which indicate that when Gilroy signed his application for a military service ballot on October 22, 1963, it was witnessed and sworn to before one D.F. Seiler, a captain in the 3rd U.S. Marine Corps stationed at Okinawa. This was only six days before he signed the absentee ballot now in question.
*583 In an attempt to cure the obvious defect, Gilroy, on November 25, 1963, signed a new certificate and had it sworn to before one A.B. Haynes, a major in the U.S. Marine Corps stationed at Okinawa, and has submitted it as supplemental proof to validate his vote. I am of the opinion that such supplemental proof cannot give life to a void ballot. To permit such proof to validate a void ballot would be violative of the Legislature's mandate contained in N.J.S.A. 19:57-23. The opportunity to cast an absentee ballot is a privilege and not a right. When, where, and how one must vote is governed by the will of the Legislature. DeFlesco v. Mercer County Board of Elections, 43 N.J. Super 492 (App. Div. 1957).
We are not dealing with a case where a voter goes to a notary, or other authorized person, to have his certificate sworn to, and such person forgets to sign his name, or affix his seal or title, or makes some other technical error in completing the jurat. Such defects may be cured by supplemental proofs. In re General Election in Bethlehem Tp., Hunterdon County, 74 N.J. Super 448 (App. Div. 1962). When Gilroy took his own jurat it was in direct contravention of the statute and the instructions given to him rendering his ballot void. The board of elections properly rejected it.

McDERMOTT'S BALLOT
The board of elections rejected Mrs. McDermott's absentee ballot because a physician's certificate did not accompany it as required by N.J.S.A. 19:57-18. On November 21, 1963 she submitted an affidavit by her doctor certifying she was too ill to go to the polls to vote on November 5, 1963. The argument now made is that this cured any existing defect. Supplemental proofs may be used to cure defects in casting absentee ballots where the defects are merely insignificant irregularities in the nature of "unwitting omissions of a formal requirement otherwise supplied in substance." This is particularly true when the error is made by the board of *584 elections in interpreting the election laws. Wene v. Meyner, 13 N.J. 185 (1953).
In furtherance of this philosophy and in liberally construing the election laws so as not to disenfranchise a voter, the courts have allowed supplemental proof to be submitted to enlarge the contents of a doctor's certification which had been originally submitted with the voter's ballot. In re Election in Bethlehem Tp., supra; In re Moore, 57 N.J. Super. 244, 254 (App. Div. 1959).
The only reported case in which the court held a medical certificate did not have to be filed with the voter's ballot was in In re Farley, 78 N.J. Super. 349 (App. Div. 1963), certification denied 40 N.J. 220 (1963). That case is clearly distinguishable from the instant case. In Farley the court dealt with the problem of a voter who was ill (pregnant) when application was made for an absentee ballot but who had recovered before election day and, therefore, could not get a doctor to truthfully certify that she couldn't go to the polls to vote on election day. In a well-reasoned opinion the court, recognizing the fact that such a voter is not permitted to vote at the polls because of N.J.S.A. 19:57-28, permitted the voter's ballot to be canvassed even though no doctor's certificate accompanied the ballot. The Farley case must be limited to factual situations where a civilian voter applies for an absentee ballot due to illness, or other reason, which the voter expects will prevent him from personally going to the polls to cast his ballot, but before election day has recovered, or is able to be present to vote in person. Mrs. McDermott's case does not fit into this classification. She was ill when she applied for an absentee ballot, and she was too ill to go to the polls to vote on election day  her failure to file a medical certificate with her ballot was fatal, rendering her ballot a nullity.
In conclusion, I find that the Gilroy and McDermott absentee ballots were properly rejected by the board of elections. The Legislature's mandate that "This act shall be liberally construed" is not a license to completely disregard *585 the clear and explicit provisions in the absentee voting law which were adopted to preserve the sanctity and proper functioning of the election laws.
Counsel for Charles S. Judson will submit an appropriate order affirming the action of the board of elections in rejecting the two ballots, and directing that a certificate of election issue to Charles S. Judson.