690 P.2d 445
**Donaldo A. MARTINEZ,**
**Plaintiff-Appellant,**

v.

**Jay G. HARRIS, Defendant-Appellee.**

**No. 15625.**

Supreme Court of New Mexico.

Nov. 5, 1984.

Kegel, Glass, McDevitt & Morow, George R. Glass, Walter R. Kegel, Santa Fe, for plaintiff-appellant.

Montgomery & Andrews, Bruce Herr, John Pound, Santa Fe, for defendant-appellee.

## OPINION

WALTERS, Justice.

In proceedings to contest the primary nomination of Jay G. Harris (Contestee) as the Democratic district judge candidate in the Fourth Judicial District, Donaldo A. Martinez (Contestant) alleged four principal grounds for challenging the primary results that either concerned the tallies in specific precincts or specific tallies from particular alleged irregularities. They were:

1. Location of polling places not within the boundaries of Las Vegas precincts 2 and 16;

2. Voters registered in precincts 15 and 16 whose voter registration cards indicated residency in precincts 14 and 13, respectively;

3. Acceptance of absentee voter ballots from voters not listed on the printed polling list who did not show evidence of registration to vote; and

4. Acceptance of votes from non-district residents.

Additionally, Contestant alleged that great numbers of absentee voters had not properly or formally taken the oath required for issuance of absentee ballots; that various candidates, county officers, and their employees engaged in improper election activities; and that non-affiliated voters were permitted to vote in the primary election. The official primary returns gave 3,972 votes to Harris; 3,919 to Martinez.

4

## I

After an investigation by court-appointed examiners and after a trial to the court, the court made findings on all of Contestant's challenges. It found, in almost every instance, that the evidence was insufficient to establish the propositions advanced by Contestant. Consequently, on that ground, it did not find fraud in any election activities or any exchange of favors among the candidates and election officials for mutual candidate support. It found that the evidence did not show that a sufficient number of unaffiliated voters voted to affect the outcome of the Martinez-Harris contest. With respect to voting by alleged non-residents of the Fourth Judicial District, or of non-residency of certain voters in precincts where they had been allowed to vote, or acceptance of non-resident absentee voter ballots, the court entered findings that the evidence did not establish the legal residence of those challenged voters, did not establish that they had voted illegally or fraudulently, and did not establish for whom they had voted. The trial court refused to hear evidence on the alleged mislocation of the polling place in precinct 2, finding that issue had not been properly raised by the pleadings. We will not disturb that finding. *Sandoval v. Department of Employment Security*, 96 N.M. 717, 634 P.2d 1269 (1981).

## II

■ The irregularities and mistakes caused by election officials will not deprive voters of their rights to participate in an election "absent bad faith, fraud or reasonable opportunity for fraud," or if it is possible to prevent disenfranchisement. *Valdez v. Herrera*, 48 N.M. 45, 53, 55, 145 P.2d 864, 869, 870 (1944). Thus, even accepting such alleged irregularities, there was a failure of proof (and consequently no substantial evidence) that votes cast by any of those challenged voters were cast for Contestant's opponent. None of the voters whose registration or whose actual votes were challenged was called to testify to establish either non-residency in the pre-

cinct in which his or her vote was cast, or for whom that vote was cast. Only by such a showing could it be held that the allegedly illegal votes would have changed the outcome of the election.

The problem in dealing with the allegedly illegal votes in a manner that should change the outcome is manifest. One example will suffice: With regard to the alleged violation of the law in permitting 175 voters living in Las Vegas precinct 13 to be registered and to vote in precinct 16 (but at a polling place located in precinct 13) Contestant urges us: (1) to invalidate all of the votes cast for himself (97 votes) and for Contestee (190 votes), and thereby wipe out Contestee's total district-wide majority of 53 votes, or (2) to reduce those votes proportionately in accordance with the percentage of the valid votes cast for both candidates. In other words, if only 132 voters were legal residents of precinct 16, Contestant argues he should be allocated 33.7% of those votes, and Contestee 66.2% because those were their tallied percentages of all votes cast in that precinct. If we accepted the first proposal, unchallenged voters would be disenfranchised. Were we to follow the second alternative, Contestant would be allocated 45 votes and Contestee 87, and Contestee's 53-vote margin would be reduced to a 2-vote margin district-wide. With a net gain of 12 votes for Contestant having been determined by the trial court, because of spoiled absentee ballots having been invalidated, Contestant would then be the election winner by 10 votes. Contestant proposes a comparable solution for precinct 15 votes, with a similarly favorable result.

■ We do not discuss the trial court's ruling invalidating allegedly spoiled absentee ballots since they do not affect the result of the appeal. However, to invalidate votes in precinct 16 or precinct 15 would require proof of non-residence of those voters and, as the trial court found, there was a failure to establish that issue by a preponderance of the evidence. It is true that Contestant and a mailman testified regarding their "knowledge" of the

out-of-precinct residence of many of the alleged non-residents, and there was no opposing evidence. The burden was on Contestant, however, to overcome the presumption of residence (which depends largely upon the *intent* of the voter) at the place where the voter casts his ballot. *State ex rel. Magee v. Williams,* 57 N.M. 588, 261 P.2d 131 (1953). We must view the evidence in a light most favorable to the trial court's judgment and resolve conflicts and indulge all reasonable inferences in its support. *Williams.*

Moreover, it would be sheer speculation to apply a percentage ratio to the unchallenged votes of those precincts, since there was no evidence whatever to show for whom any of the challenged and unchallenged voters cast their ballots. We are cited to no authority, and we know of none, which would permit an arbitrary allocation of uncontested votes.

### III

■ Contestant's most serious challenge to the validity of some of the votes cast in Las Vegas is the claim that the polling place for precinct 16 was unconstitutionally located outside the boundaries of precinct 16. He contends that the votes cast by precinct 16 voters are invalid and cannot be considered in the total vote count for the respective candidates.

Article 7, Section 1, of the New Mexico Constitution provides:

> Every citizen of the United States, who is over the age of twenty-one years, and *has resided* in New Mexico twelve months, in the county ninety days, and *in the precinct in which he offers to vote* thirty days, next preceding the election * * * shall be qualified to vote at all elections for public officers. [Emphasis added.]

Contestant construes this constitutional provision to require that the polling place itself be within the boundaries of the precinct, and there is some support for this argument from the fact that the legislature has provided, in Section 1–3–7(D) of the Election Code (NMSA 1978, Sections 1–1–1 to 1–21–14 (Orig.Pamp. and Repl.Pamp. 1984)) that

> [i]f no public building or public school building * * * and * * * no other suitable place [is] obtainable in the precinct, the * * * commissioners may designate as a polling place for the precinct the most convenient and suitable building * * * nearest to that precinct that can be obtained * * *

subject to approval of such designated polling place by order of the district judge of the county wherein the precinct is located. NMSA 1978, Section 4–38–22 (Repl.Pamp. 1984), imposes on boards of county commissioners the obligation to cause a map and record of any precinct boundary alterations or of creation of new precincts to be made and recorded by the county clerk, and NMSA 1978, Section 4–38–23 (Repl.Pamp. 1984), requires the clerk to transmit to the secretary of state, within 30 days of such action, a certified statement and a map showing such precinct names and boundaries.

The evidence of boundary changes for the Las Vegas precincts was far from clear. The maps on file with the secretary of state conflicted with the map used by the county clerk to delineate precinct boundaries, but the evidence was that certified copies of boundary resolutions, changes, and maps had not been sent to the secretary of state as required by Sections 1–3–8 and 4–38–23. There was further evidence that the map in the county clerk's office and used in county elections placed the "CIMA Building," designated as the precinct 16 polling place, within precinct 16, although the secretary of state's map showed it to be across the street in precinct 13. The trial court did not make any findings regarding which of the conflicting maps was controlling on the issue of precinct 16's boundary line. It did find, however, that the CIMA Building had been used since 1982 as the precinct 16 polling location, and that the county clerk's map had for years governed assignment of voters to the various precincts and polling places. In a separate finding, the court

noted the lack of any substantial evidence that the location of the polling places had any effect on the outcome of the election being contested.

The failure to make findings concerning the in- or out-of-precinct location of the polling place is not, we think, a fatal gap in the court's findings or decision. Instead, we believe a proper construction of the constitutional language, "has resided * * * in the precinct in which he offers to vote," is that it requires residency within the precinct for which one registers. *See Thompson v. Robinson*, 101 N.M. 703, 688 P.2d 21 (1984). We believe, further, that the constitution implies and the Election Code mandates that a voting machine or ballot box be assigned to receive or register votes from each specific precinct. We hold that the constitution does not require the machine or ballot box itself to be within the precinct. If we were to read the constitution as requiring the latter, then the legislative provision for establishing polling places most convenient, most suitable, and nearest to the precinct, when one is not available within the precinct's boundaries, would be unconstitutional and void. In such an instance, whole precincts could be disenfranchised if polling places could not be obtained inside their boundaries.

We will not read a constitutional provision in such a way that might, in certain circumstances, deny eligible voters their right to vote *in* their precincts only because the ballot box or voting machine *has been placed outside* their precincts' boundaries. Any earlier cases holding otherwise are expressly overruled and shall not govern when there is no evidence that the integrity of the electoral process has been destroyed or even threatened by the physical location of the polling place. The "offers" of precinct 16 voters to vote in the precinct 16 election were not compromised nor were they ineffective simply because precinct 16 voters might have had to walk across an alleged but unproved boundary line between precinct 16 and precinct 13. To read the constitutional provision as advanced by Contestant would invalidate all votes cast in such multiple-precinct polling places throughout the state. As was said in *State ex rel. Read v. Christ*, 25 N.M. 175, 179 P. 629 (1919), the elective franchise is one of the highest rights of a citizen and no construction of constitutional provisions will be indulged which will defeat, unduly restrict, or obstruct the free exercise of that right unless the strict letter of the law so requires. We are satisfied that the constitutional language of Article 7, Section 1 is not violated by one who offers to vote in the precinct in which he is registered at a designated polling place for his precinct that is outside the boundaries of his precinct.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

RIORDAN, STOWERS, MINZNER, and SCARBOROUGH, JJ., concur.