811 P.2d 75

**Georgia KLUMKER, Plaintiff-Appellant,**

v.

**Guss VAN ALLRED, Jr.,
Defendant-Appellee.**

No. 19077.

Supreme Court of New Mexico.

May 6, 1991.

Hinkle, Cox, Eaton, Coffield & Hensley, Nancy Augustus, Stephanie Landry, John J. Kelly, Albuquerque, for plaintiff-appellant.

George H. Perez, Bernalillo, for defendant-appellee.

## OPINION

MONTGOMERY, Justice.

This is an election contest. The unsuccessful Democratic candidate for the office of county commissioner in Catron County in 1988,[1] Georgia Klumker, challenged the result of the election, in which Republican Guss Van Allred was declared the winner by a vote of 735 to 731. Klumker contested this result in district court,[2] attacking the absentee ballots cast by three of Van Allred's half-cousins (the Allred brothers)[3] and asserting that three other absentee ballots, cast for Klumker, had been improperly rejected by the precinct board and should have been counted in her favor. The principal issue raised by her challenge relates to the residence for voting purposes of each of the Allred brothers. The district court rejected the challenge and confirmed the count as certified by the county clerk, holding that the Allred brothers were residents of Catron County for voting purposes and that the other three ballots had been properly rejected. Klumker appeals and we reverse, finding a lack of substantial evidence to support the court's findings as to residence and holding that the court's application of provisions of the Absent Voter Act[4] to disqualify the other three ballots was erroneous as a matter of law.

### I.

The Allred brothers were born and reared in Catron County. They and other extended family members have a family homestead in Glenwood, which the brothers visit two or three times a month (or, in Robert Allred's case, perhaps as often as every Sunday). They keep clothing and other personal effects and property there; and each of them intends, during times when he is absent, to return to the home at Glenwood and, someday, to return and reside there permanently.

However, prior to the 1988 election each of the Allred brothers had lived elsewhere for periods ranging from eight to eighteen years. John Allred moved to Texas in 1970 and has lived continuously in that state since then. He voted in El Paso County in the 1986 and 1987 general elections and in the 1988 primary. Robert Allred moved to Lordsburg in Hidalgo County, New Mexico, in 1975. He voted there during the period 1976–86. Bruce Allred moved to Silver City in Grant County, New Mexico, in 1979; he voted there in the 1984 and 1986 general elections.

---

1. Although the term of office for which Klumker ran has expired, she asserts that this appeal is not moot because, if she prevails, she will be entitled (under NMSA 1978, Section 1–14–4 (Repl.Pamp.1985)) to the emoluments of the office during the term for which she was elected. She also claims that the questions involved in her contest are recurring and of significant public importance. *See City of Albuquerque v. Campos*, 86 N.M. 488, 491, 525 P.2d 848, 851 (1974). The question of Klumker's entitlement to the county commissioner's salary as an "emolument" of office is not before us, but we agree in any event with Klumker—and Van Allred does not disagree—that this appeal is not moot.

2. Pursuant to NMSA 1978, §§ 1–14–1, –3 (Repl. Pamp.1985).

3. As the trial court found, the candidate for whom each of the Allred brothers voted is not known; there was no testimony at trial as to the tenor of their votes, based on the privilege set out in SCRA 1986, 11–507. Under the holding in this opinion that the Allred brothers were not entitled to vote, the privilege in Rule 11–507 does not apply and the tenor of their votes may be determined on remand. *See Kiehne v. Atwood*, 93 N.M. 657, 660–62, 604 P.2d 123, 126–28 (1979) (one who votes illegally forfeits the right of ballot secrecy).

4. NMSA 1978, §§ 1–6–1 to –18 (Cum.Supp. 1990). The Absent Voter Act forms part of the Election Code, NMSA 1978, §§ 1–1–1 to –24–4 (Repl.Pamp.1985 & Cum.Supp.1990).

Robert and Bruce Allred each owns a home in Lordsburg and Silver City, respectively. John Allred has rented or owned a residence in El Paso, Texas, since 1981. Each of the brothers is married and has children; these immediate family members live in the respective homes of the three brothers. Each is employed in or near the community where his immediate family lives; and each lists this place of residence on his automobile registration, driver's license, tax returns, and bank account. In April 1988 Robert and Bruce registered to vote in Catron County, and in October of the same year John did likewise. Each was "physically present," as the trial court found, in Catron County at the time he registered. None made any change in his living arrangements at or before that time. All three voted in the general election by absentee ballot.

The district court found that although each of the Allred brothers had always considered Glenwood his home and permanent residence, because of the scarcity of employment in Catron County each had a job that required him to maintain a second residence outside the county but at which his habitation was not fixed. The court also found (expressing the finding as a conclusion of law) that the place in which each brother's habitation was fixed and to which, whenever he was absent, he had the intention to return was Glenwood, Catron County, New Mexico. Klumker challenges these findings as not supported by substantial evidence and as flowing from an incorrect application of the New Mexico statute prescribing rules for determining residence for voting purposes, NMSA 1978, Section 1–1–7 (Repl.Pamp.1985).

The precinct board rejected absentee ballots cast by Mrs. Tolbert Lyon and Mr. W.A. Sullivan, each of whom voted for Klumker. The two ballots were rejected because the forms on the reverse side of the mailing envelopes for the ballots did not contain the printed name of the voter on a line provided for that purpose, were not dated, contained (in the case of the Sullivan ballot) the wrong registration number, and did not contain (in the case of the Lyon ballot) the voter's address. The district court concluded that these were proper reasons for rejection.

Another absentee ballot was marked "spoiled" by the precinct board.[5] The ballot was rejected because the machine used to tabulate the absentee ballots would not accept it, the voter had voted for more than one presidential candidate, and it was marked as a straight ticket but had been voted as a split ticket. The trial court held the first two of these three reasons proper for rejecting the ballot.

Klumker asserts on appeal that the Sullivan, Lyons, and "spoiled" ballots were improperly rejected and, under our Election Code, should have been counted.

## II.

Under New Mexico law, "residence" for voting purposes is defined as follows: "[T]he residence of a person is that place in which his habitation is fixed, and to which, whenever he is absent, he has the intention to return[.]" Section 1–1–7(A). We recently considered this definition, and the other rules for determining residence for voting set out in Section 1–1–7, in *Apodaca v. Chavez*, 109 N.M. 610, 788 P.2d 366 (1990). That case involved circumstances analogous to those in the present case, insofar as they bear on the question of a voter's residence for voting purposes. We held that the person whose residence was challenged[6] resided in the county where he maintained a significant physical presence and intended to remain. *Id.* at 614–15, 788

**5.** The district court found it was uncertain as to whether the precinct board counted or rejected the spoiled ballot. However, the voter of the spoiled ballot indicated it was to be a straight Democrat ticket vote and then also specifically voted for Democrat Klumker in the county commissioner race.

**6.** Chavez's election as a Santa Fe County Commissioner was contested on the ground that he was not a resident of Santa Fe County. We treated the rules of residence for voting purposes under our Election Code and Constitution as controlling on the question of the residence required for a candidate for election as county commissioner. 109 N.M. at 614, 788 P.2d at 370.

P.2d at 370–71. The instant case presents facts which in many ways are the opposite (or, as Klumker suggests, the "flip side") of the facts in *Apodaca*. Whereas in *Apodaca* the person whose residence was challenged (Chavez) spent substantial amounts of time at his home in Santa Fe County (three or four nights a week), always voted in that county, and used a Santa Fe County address on his driver's license, tax returns, bank accounts, and other important documents, the Allred brothers spent most of their time with their families outside Catron County, voted elsewhere than in Catron County before registering there in 1988, and used addresses outside Catron County on their important documents.

In *Apodaca*, we took note of the presumption in Section 1–1–7(B) that

the place where a person's family resides is presumed to be his place of residence, but a person who takes up or continues his abode with the intention of remaining at a place other than where his family resides is a resident where he abides[.]

We ruled that this presumption was rebutted by the evidence that, despite the fact that his immediate family resided in Rio Arriba County, Chavez had continued an abode, with the intention of remaining, at a place in Santa Fe County. 109 N.M. at 615, 788 P.2d at 371. Here, the presumption is reinforced, rather than rebutted, by the evidence as to where each of the Allred brothers abides. The trial court made no finding of where each abides, but it may be fairly inferred, from the court's findings that the brothers' "habitation" was fixed in Catron County, that the court found they did, in fact, abide in that county.

There was no substantial evidence to support such a finding. The terms "abode" and "habitation" are synonyms for the place where a person *lives*. *Apodaca* reconfirms that in New Mexico a person can live in more than one place. *Id.* at 613, 788 P.2d at 369; *see also State ex rel. Magee v. Williams*, 57 N.M. 588, 592–93, 261 P.2d 131, 133 (1953). Nevertheless, "[t]here can be only one residence" for voting purposes. Section 1–1–7(C); *Williams*, 57 N.M. at 592, 261 P.2d at 133.

Although residence is often "largely a question of intention," *Klutts v. Jones*, 21 N.M. 720, 727, 158 P. 490, 492 (1916), we recognized in *Apodaca* that intent and a significant physical presence must be conjoined to establish a place as one's residence for voting purposes. *See Apodaca*, 109 N.M. at 614, 788 P.2d at 370. While the trial court found on substantial evidence that the Allreds' intention was to return to Catron County, there was no substantial evidence that they had, at any time during the 8–18 year period before 1988, the requisite physical presence in Catron County. In short, and unlike Mr. Chavez in *Apodaca*, there was no evidence that they actually *lived* in Catron County.

The trial court's only findings bearing on physical presence were that each of the Allred brothers maintained clothing and other personal property at their home and ranch in Glenwood, that they each spent as much time as they could there, and that each was "physically present" when he registered to vote. The last finding—physical presence on registering to vote—has no particular legal significance. What is required is not momentary, or occasional or sporadic, physical presence; it is *significant* physical presence consistent with the ordinary conception of *living* (or abiding, or residing, or dwelling, or maintaining a habitation) in a place. The Allred brothers may have been physically present in the county clerk's office when they registered to vote; they may have returned to Glenwood two or three times a month or even every Sunday; and they may have kept various articles of personal property there and worked to keep up the ranch and make various repairs there. But there was no evidence that they *lived* there on any kind of regular basis sufficient to enable the court to find that Glenwood was a place of fixed habitation.

We agree, furthermore, with Klumker's argument that each of the Allred brothers lost his residence for voting purposes in Catron County when he moved outside the county and voted at his then new place of residence. Courts in other jurisdictions have held, based primarily on common-law

principles, that a person who physically leaves the county where he has resided and then votes or qualifies to vote outside that county loses his residence in that county for voting purposes. *See Harris v. Textor*, 235 Ark. 497, 499, 361 S.W.2d 75, 76–77 (1962); *Del Rio Independent School Dist. v. Aldrete*, 398 S.W.2d 597, 601–03 (Tex.Ct. App.1965). *See also Clark v. Quick*, 377 Ill. 424, 426–27, 36 N.E.2d 563, 565 (1941) (when one abandons his home and takes up residence in another county or election district, he loses voting privilege in district from which he moved).

■ Section 1–1–7 addresses this problem in New Mexico. John Allred's situation is covered by Section 1–1–7(H), which provides:

> [A] person loses his residence in this state if he votes in another state in an election requiring residence in that state, and has not upon his return regained his residence in this state under the provisions of the constitution of New Mexico[.]

John voted in Texas, and Texas requires residence for voting. Tex.Elec.Code Ann. § 11.002(5) (Vernon Supp.1991). Article VII, Section 1, of our Constitution requires a voter to reside in New Mexico for one year, and in the precinct in which he offers to vote for thirty days, next preceding the election. For John—who became a Texas resident for voting purposes—to have reacquired residence for voting in New Mexico, he would have had to physically move from Texas at least one year before the general election. If he had always maintained a physical presence in New Mexico (which we have held he had not), he would at least have had to change his voter registration from Texas to New Mexico.

Similarly, with respect to Robert and Bruce, although Section 1–1–7 does not provide that a person loses his residence for voting purposes in a county if he votes in another county, the section does provide that "[t]here can be only one residence" for voting and that "a change of residence is made only by the act of removal joined with the intent to remain in another place." Section 1–1–7(C). Klumker argues that since Robert and Bruce established voting residence in Hidalgo County and Grant County, respectively, they could only become Catron County voting residents by "removing" from Hidalgo and Grant counties to Catron County with the intent to remain in the latter county.

■ We believe that under Subsections (C) and (H) of the statute a person who does not have a sufficient physical presence in a place to qualify that place as an abode or a habitation (*i.e.*, as a place where the person *lives* or resides, even if only part-time) must establish such a physical presence in the place—that is, he must "remove" to the place—before his voting residence can be changed to that place. And, under Subsection (H), if the person has voted in another state that requires residence for voting, he must additionally comply with Article VII, Section 1, of the Constitution before his voting residence can be changed to one in this state. Where an individual already *has* such a significant physical presence in the place that he may be said to reside there, it may be open to question whether anything additional needs to be done, besides registering to vote, to qualify the place as his residence for voting purposes. We need not and do not decide this question on this appeal. We decide only, and we hold, that none of the Allred brothers had a sufficient physical presence in Catron County at the time each registered to vote there in 1988 so as to effect a change in his residence for voting purposes. In order to bring about such a change, each would have had to do something to remove himself to Catron County from where he then resided. As we have said, none did.

The district court on remand should determine how the Allred brothers voted in the 1988 general election and adjust the vote count accordingly.

### III.

■ The trial court ruled that the precinct board had properly rejected the Sullivan and Lyons absentee ballots because the forms on the reverse side of the mailing envelopes were improperly filled out. Van

Allred defends this ruling by relying on NMSA 1978, Sections 1–6–9 and 1–6–14 (Cum.Supp.1990). The first of these sections provides that, after marking his or her ballot, "[t]he person voting shall then fill in the form on the reverse of the official mailing envelope and subscribe and swear to it before a person authorized to administer oaths." Van Allred points to the use of the word "shall" in this statute and to our statement in *Kiehne v. Atwood,* 93 N.M. 657, 667, 604 P.2d 123, 133 (1979), that the voter's duty of subscribing and swearing to his ballot is mandatory, not merely directory. *Kiehne,* however, involved the requirements in former Sections 1–6–4 and 1–6–9 that the voter subscribe and swear to his affidavit that, *inter alia,* he was duly registered and qualified to vote by absentee ballot, and the requirement that his signature be attested by a person authorized to administer oaths. We properly held that these requirements are of sufficient importance in safeguarding the purity of elections that failure to comply with them necessitates rejection of the ballot.

No similar importance attaches to the requirements in the form on the official mailing envelope that the voter's name be printed beneath his or her signature, that the ballot envelope be dated, or that the voter's address or correct registration number be inserted. These requirements are not found in our Election Code, which provides only that the ballot shall be rejected "[i]f one or both of the signatures are missing[.]" NMSA 1978, § 1–6–14(B). We held in *Kiehne* that a ballot may be declared void only when the legislature *expressly provides* that deviation from the prescribed procedure prevents counting the vote. 93 N.M. at 664, 604 P.2d at 130. The legislature has expressly provided that an absentee ballot shall be rejected if one or both signatures are missing from the mailing envelope, Section 1–6–14(B); but no other provision of the statutes authorizes disqualifying a ballot on the grounds relied on by the precinct board and the district court in this case. To do so conflicts with the well-established policy in New Mexico that "favors the right to vote and seeks to give effect to the express will of the electorate." *Kiehne,* 93 N.M. at 664, 604 P.2d at 130; *see also State ex rel. Read v. Crist,* 25 N.M. 175, 180, 179 P. 629, 630 (1919); *Bryan v. Barnett,* 35 N.M. 207, 211, 292 P. 611, 612 (1930); *Valdez v. Herrera,* 48 N.M. 45, 55, 145 P.2d 864, 870 (1944) (policy of state is that disenfranchisement of voter is to be avoided where possible).

▮ For the same reasons, we hold that the precinct board and the district court's rejection of the "spoiled" ballot was improper. Once again, there is no statutory provision that permits voiding a ballot where the electronic counting machine refuses to accept it, where a straight ticket is indicated but the ballot is actually voted a split ticket, or where the ballot is marked with two choices for a particular office but is properly voted for only one choice in each of the remaining races. The refusal of the machine to tally the ballot did not, of course, require rejecting it; it could and should have been counted by hand. The instructions to absentee voter precinct boards promulgated by the Bureau of Elections in the Secretary of State's office provide that where a ballot is marked as a straight ticket but actually voted as a split ticket, the votes cast in individual races should be counted even if they are cast for a candidate in a different political party than the candidates for whom the straight ticket is voted. The same instructions provide that where the voter votes for more than one candidate in a particular race, the votes for the remaining candidates are still to be counted. The Director of the Bureau of Elections testified, as an expert witness, that the Bureau's instructions contemplated that the ballot should have been counted with respect to the county commissioner's race, in which the voter voted for only one candidate—Klumker. This testimony regarding an interpretation of a regulation by one charged with the duty of administering it was entitled to be accorded substantial weight by the reviewing court. *See State ex rel. Battershell v. City of Albuquerque,* 108 N.M. 658, 662, 777 P.2d 386, 392 (Ct.App.1989).

On remand, we instruct the district court to include in Klumker's total the votes cast in the Sullivan and Lyons ballots and in the "spoiled" ballot.

The judgment is reversed, and the cause is remanded with instructions to proceed in conformity with this opinion.

IT IS SO ORDERED.

RANSOM and FRANCHINI, JJ., concur.