1998-NMCA-104

962 P.2d 640

**Lynn H. DARR, Plaintiff–Contestant–Appellee,**

v.

**VILLAGE OF TULAROSA and Margaret Gonzales, Defendants–Contestees–Appellants.**

**No. 18769.**

Court of Appeals of New Mexico.

June 10, 1998.

Certiorari Denied July 21, 1998.

Lynne Pruett, Hakanson & Pruett, P.C., Alamogordo, for Appellee.

Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, for Appellants.

*OPINION*

HARTZ, Chief Judge.

{1}   On July 29, 1997 the district court entered a judgment ordering a new election for two positions on the Tularosa Village Council.  The Contestees—the Village and Margaret Gonzales (the Village Clerk)—appeal.  We reverse and remand for entry of judgment in favor of the Contestees, upholding the official results of the municipal election conducted in March 1996.  Although there were irregularities in the voting, the district court may still have been able to determine which candidates received the greatest number of valid votes from lawful voters.  Because the candidate challenging the election did not satisfy his burden of establishing that he was elected to the Council, his challenge must be rejected.

*BACKGROUND*

{2}   The Village of Tularosa held a municipal election on March 5, 1996.  There were two precincts for the election.  One was the precinct for absentee votes.  The other was a consolidated precinct with one polling place for all those voting on election day.  At stake were two seats on the Village Council and the position of Municipal Judge.  The judgeship election is not being challenged.  The race for the second seat on the Village Council was close.  The official results were as follows:

| | |
|---|---|
| Margaret Trujillo | 400 |
| Jeni (Bebe) Flores Alexander | 326 |
| Thomas J. McKean | 316 |
| Lynn H. Darr | 312 |
| William T. Powell | 92 |

On March 29, 1996 candidate Darr (Contestant) filed a challenge to the election in Otero County District Court.  As indicated above, the official results showed him only fourteen votes shy of the second-place finisher.

{3}   The election was governed by the Municipal Election Code, NMSA 1978, Sections 3–8–1 to –80 (1985, as amended through 1995) and 3–9–1 to –16 (1973, as amended through 1995).  After a non-jury trial on April 22 and 23, 1997 the district court found several violations of the Code. One problem was voting by nonresidents of the Village. To be eligible to vote, one must be a "qualified elector," *see* § 3–8–40(A); and only a resident of the municipality can be a qualified elector, *see* § 3–1–2(K).  The Code requires the county clerk to provide the municipal clerk with a list of registered voters entitled to vote in the municipal election.  *See* NMSA 1978, § 3–8–6.  The residence of a registered voter is presumed to be at the address stated on the voter's affidavit of voter registration filed with the county clerk, *see* § 3–8–3(A), but that presumption may be rebutted, *see* § 3–8–3(B).  Based on the testimony at trial, the district court found that seventeen voters whose registered addresses were in the Village were in fact not residents of the Village. Eleven had voted in person and six by absentee ballot.  In a Minute Order announcing its decision, the court stated that it "does not know how any of these persons or any other person voted in the subject election."

{4} None of the seventeen voters had been challenged on election day, even though a member of the precinct board or a challenger may challenge a person offering to vote on the ground that the person is not a qualified elector. *See* §§ 3–8–43(A)(3), 3–9–11(C). The district court stated in its Minute Order that the failure to challenge the voters would ordinarily constitute a waiver, but that it would not find a waiver here because of confusion in the Village regarding the eligibility of nonresidents to vote. It found that the Village Clerk and a member of the council had informed various nonresidents of the municipality that they could vote so long as their names appeared on the voter list. There was conflicting testimony regarding what was said on this matter at the election school conducted by the Village Clerk pursuant to statutory mandate. *See* § 3–8–21(A) ("The municipal clerk shall conduct or cause to be conducted an election school not less than five days prior to the election.").

{5} The district court also found irregularities related specifically to absentee voting. It found that four individuals were permitted to vote in person on election day at the polling place despite having been issued absentee ballots, *see* § 3–9–13(A) ("No person who has been issued an absentee ballot shall vote in person at that person's polling place."), although the court stated that there was no evidence that any of the four had voted more than once. It also found that "[t]here was established other instances in which absentee ballots were handled inappropriately by the office of the Village clerk or precinct officials." In particular, the district court found that (1) the Village Clerk had failed to comply with the requirements of Section 3–9–5(A) "to list [on the absentee ballot register] the date ballots were delivered, registration status of voters, the time ballots were returned, and whether absentee ballot applications had been accepted or rejected" and (2) the Village Clerk had failed to place the label "absentee ballot" on the voter signature roster by the names of those who had been issued absentee ballots, as required by Section 3–9–4(H).

{6} The court rejected the election results pursuant to Section 3–8–67, which states:

### Contest of election; burden of proof.

A. If a contestant makes a prima facie showing that the precinct board or municipal clerk failed to substantially comply with those provisions of the Municipal Election Code which protect the secrecy and sanctity of the ballot and prescribe the duties of the precinct board or municipal clerk, then the burden shall be on the contestee to prove that no fraud, intimidation, coercion or undue influence was exerted by such precinct board members or the municipal clerk, and that the secrecy and purity of the ballot was safeguarded and no intentional evasion of the substantial requirements of the law was made.

B. If the contestee fails to make such a showing, the votes of that entire polling place shall be rejected; provided, that no such rejection shall be made where it appears to the court that the members of the precinct board or municipal clerk ignored the requirements of the Municipal Election Code with the probable intent of procuring the rejection of the entire vote in the precinct.

The district court ruled that "[t]he irregularities established in the record amount to a failure to safeguard the purity of the ballot." The court then concluded that all votes of both precincts had to be rejected and therefore a new election had to be conducted. Explaining its reasoning for rejecting all the votes at the election, the district court stated the following in its Minute Order:

17. This Court cannot do a mathematical calculation from the irregularities addressed herein and with mathematical certainty rule whether the results of the Tularosa Municipal Election of March 1996, would have changed had they not occurred.

18. This Court cannot expect that each and every irregularity in an election can be discovered. In addition, the Court cannot expect that each and every election be conducted perfectly without irregularity. That would be impossible given the re-

sources available to county and municipal clerks.

19. However, the Courts [sic] Findings of Fact and Conclusions of Law, in an election where fourteen (14) votes separate the Contestant and the elected official, render the results uncertain. It does not appear to the Court that the purity of the ballot was safeguarded.

{7} On appeal the Contestees argue that the district court erred by not reading Section 3–8–67 in the light of Section 3–8–64(A), which also governs election contests. The provision states:

Judgment shall be rendered in favor of the person legally qualified to take office for whom a plurality of the legal votes shall be proven to have been cast in accordance with 3–8–32 NMSA 1978, and shall be to the effect that the person is entitled to the office in controversy with all the privileges, powers and emoluments belonging thereto and for his costs. If the contestant prevails, then that person shall have judgment placing the contestant in possession of the contested office and for the emoluments thereof from the beginning of the term for which the contestant was elected and for costs.

Section 3–8–64(A). According to the Contestees, a contestant thus has a cause of action under Section 3–8–67 only if the contestant can establish that rejecting the votes of a precinct would result in the contestant's election to office.

■ {8} We agree in part with the Contestees. For the reasons explained below, we hold that all the votes in a precinct can be rejected pursuant to Section 3–8–67 only if the contestant can show that the violations of the Municipal Election Code render it impossible to determine which candidate received the requisite plurality of lawful votes cast in the election.

*DISCUSSION*

■ {9} Under Section 3–8–67, to obtain a judgment rejecting all the votes from an entire polling place, a contestant must first make "a prima facie showing that the precinct board or municipal clerk failed to sub-stantially comply with those provisions of the Municipal Election Code which protect the secrecy and sanctity of the ballot and prescribe the duties of the precinct board or municipal clerk." Section 3–8–67(A). Once that is accomplished, the burden shifts to the party seeking to sustain the election, who must "prove that no fraud, intimidation, coercion or undue influence was exerted by such precinct board members or the municipal clerk, and *that the secrecy and purity of the ballot was safeguarded* and no intentional evasion of the substantial requirements of the law was made." *Id.* (emphasis added).

{10} Thus, the first issue to be considered by the district court should be whether the precinct board or municipal clerk violated any provisions of the Municipal Election Code relating to the "secrecy and sanctity of the ballot." It is not clear to us how Contestant satisfied this requirement. In particular, we note that no provision of the Municipal Election Code requires the municipal clerk or precinct board to challenge the right to vote of nonresidents who appear on the voting list prepared by the county clerk. *Cf.* § 3–8–43(A)(3) (stating that the precinct board "may" challenge a voter for not being a "qualified elector"). On the other hand, the Village Clerk's failure to comply with requirements relating to the absentee ballot register, *see* § 3–9–5, and the voter signature roster, *see* § 3–9–4(H), may well satisfy the requirements of Section 3–8–67(A). In addition, Contestant contends that providing inaccurate information at the election school, *see* § 3–8–21(A), would also satisfy the statute. In any event, the Contestees have not argued that Contestant failed to make the requisite prima facie showing that the Village Clerk or precinct board violated the Municipal Election Code. We therefore need not decide the issue.

{11} The Contestees also do not challenge the district court's finding that they failed to satisfy their statutory burden of proving that the "purity of the ballot was safeguarded" despite noncompliance with the Municipal Election Code. *See* § 3–8–67(A). At first blush, then, it appears that the Contestees have conceded their entire case. After all, Section 3–8–67(B) states that if the

Contestees fail to make the necessary showing—that the purity of the ballot was safeguarded—"the votes of that entire polling place shall be rejected." In light of the fact that there were only two precincts in the election at issue, and all the votes at each precinct would have to be rejected, it would seem to follow that the election would have to be set aside. (That does not necessarily mean that the district court would have the authority to order a new election. *See Hitt v. Tressler*, 7 Ohio St.3d 11, 455 N.E.2d 667 (1983). But given our disposition of the appeal, we need not reach that issue.)

{12} Despite the apparent irresistible force of Contestant's argument, we hold that the district court should not have rejected all the votes in the election for members of the Village Council. The command of Section 3–8–67(B) cannot be read in isolation. It is not the only mandatory language in the Municipal Election Code pertinent to this election contest. Another section of the Code provides a contrary instruction. Section 3–8–64(A), one of a series of provisions (including Section 3–8–67) relating to election contests, states: "Judgment shall be rendered in favor of the person legally qualified to take office for whom a plurality of the legal votes shall be proven to have been cast. . . ." What if a contestant prevails pursuant to Section 3–8–67—requiring that all the votes in the election be rejected—but the evidence also proves which candidate received a plurality of the legal votes—so that the candidate is entitled to take office pursuant to Section 3–8–64? Which statutory command takes precedence?

{13} Before answering this question, it is important to point out that even when there have been irregularities in the conduct of an election, it may be possible to establish precisely who voted unlawfully and how those persons voted. For example, in the case before us it was possible to determine which nonresidents voted either in person or absentee, and the failure to include all the required information on the absentee ballot register did not preclude a determination of who voted absentee and which persons who received absentee ballots then voted in person.

■ {14} Of course, identifying the persons who voted unlawfully is only the first step in determining who received the plurality of lawful votes. The official vote totals do not distinguish between lawful voters and unlawful voters. The district court in this case stated that it was impossible to determine how the unlawful voters voted. But that was solely a result of the failure of the parties to offer evidence on the matter. Although the secrecy of the ballot is in most respects sacrosanct in this country, that secrecy has limits. In a number of jurisdictions, including New Mexico, one who votes unlawfully may be required to disclose his or her vote in a court of law. Rule of Evidence 11–507 NMRA 1998 states:

**Political vote.**

■ Every person has a privilege to refuse to disclose the tenor of the person's vote at a political election conducted by secret ballot *unless the vote was cast illegally.*

(Emphasis added.) In *Kiehne v. Atwood,* 93 N.M. 657, 660–62, 604 P.2d 123, 126–28 (1979), our Supreme Court upheld the use of testimony by ineligible voters regarding how they cast their ballot in order to resolve an election contest in favor of the challenger. Thus, it may have been possible in the present case to question those who voted unlawfully for the purpose of determining whether Contestant received a sufficient number of the lawful votes to be entitled to a seat on the Village Council. Also, circumstantial evidence may be considered in resolving how an ineligible voter voted. *See Montoya v. Ortiz,* 24 N.M. 616, 623–24, 175 P. 335, 338 (1918).

{15} We now return to our earlier question: What must a court do if it can determine the person elected by the lawful voters despite the presence of irregularities that would compel rejecting all votes pursuant to Section 3–8–67? Must the district court obey the command of Section 3–8–67(B), or is it bound by the command of Section 3–8–64 to render judgment in favor of the person who received the necessary plurality of the legal votes? Obviously, one or the other of the statutory commands cannot be obeyed. There is no alternative but to limit the scope of one of them.

{16}   When one considers the fundamental principles governing elections in our republic, the choice is clear.   If Section 3–8–64 can be applied, Section 3–8–67 must be disregarded.   That is, if it is possible to determine the lawful winner, the court should do so pursuant to Section 3–8–64.   Rejecting all votes pursuant to Section 3–8–67(B) is a proper remedy only when the voting irregularities create uncertainties that prevent the court from declaring which candidate . received a plurality of the votes that were lawfully cast.   For example, this occurred in *Trujillo v. Trujillo,* 52 N.M. 258, 197 P.2d 421 (1948).   The dispute was governed by NMSA 1941, Section 56–347 (1939), whose substantive provisions are essentially the same as those of Section 3–8–67.   *See* NMSA 1978, § 1–14–13 (1969) (the apparent successor to Section 56–347).   Our Supreme Court affirmed the rejection of all votes in two of the election precincts.   In one precinct the election officials "left the polls unattended during the noon hour to go to lunch, save for the presence of a democratic polling clerk." *Trujillo,* 52 N.M. at 269–70, 197 P.2d at 428. In the other "the election officials ... permitted ... the democratic candidate for county school superintendent [ ] to deliver the ballot boxes and both keys thereto, along with all election equipment, to the office of the county clerk in Tierra Amarilla, following the official count and recording of the vote in said precinct."   *Id.* at 270, 197 P.2d at 428. The violations of election law in *Trujillo* created such an opportunity for tampering with voting records that voiding all the votes in the precincts involved seemed the only reasonable alternative.

{17}   Our construction of the Municipal Election Code furthers the "well-established policy in New Mexico that '... seeks to give effect to the express will of the electorate.'"   *Klumker v. Van Allred,* 112 N.M. 42, 47, 811 P.2d 75, 80 (1991) (quoting *Kiehne,* 93 N.M. at 664, 604 P.2d at 130). "'[T]he essential principle of the elective system [is] that the will of the majority of the qualified voters shall determine the right to an elective office[.]'"   *Kiehne,* 93 N.M. at 661, 604 P.2d at 127 (quoting *Montoya,* 24 N.M. at 622–23, 175 P. at 337–338).   We should avoid disenfranchising unchallenged

voters.   *See Martinez v. Harris,* 102 N.M. 2, 4, 690 P.2d 445, 447 (1984).

> [T]here is ... a constitutional mandate to which we must yield, that one which says that the person receiving the highest number of votes shall be elected to office; as well as the often announced principle that voters will not be denied their rightful voice in government absent a certain and controlling conflict with a more compelling consideration, that of the public interest to be served in the preservation of the validity of elections.

*Valdez v. Herrera,* 48 N.M. 45, 54, 145 P.2d 864, 869–70 (1944).   "'[E]ven if the acts of [election] officers are fraudulent the votes of electors should not be invalidated if it is possible to prevent it.'"   *Orchard v. Board of Comm'rs of Sierra County,* 42 N.M. 172, 188, 76 P.2d 41, 51 (1938) (quoting 9 R.C.L. "Elections" § 102).   "Where any reasonable construction of the statute can be found which will avoid [wholesale disenfranchisement of qualified electors through no fault of their own], the Courts should and will favor it." *Reese v. Dempsey,* 48 N.M. 485, 493, 153 P.2d 127, 132 (1944).

{18}   In short, concern for the purity of elections cannot justify disenfranchising lawful voters when the impact of the "impurity" on the election results can be identified with sufficient precision to provide the district court with comfort that it can determine the winner of the lawful voting.   Clean elections are essential to public confidence in, and respect for, our government.   Failure to comply with election laws can undermine that confidence and respect.   But that confidence and respect can also be undermined by unnecessarily setting aside the will of the electorate. Accordingly, we will not embrace the proposition that Section 3–8–67(B) requires rejecting all the votes in an election even when it is possible to determine who received the plurality of the lawful votes.

{19}   The above discussion has assumed a conflict between Section 3–8–67(B), which requires rejection of all the votes, and Section 3–8–64(A), which requires that judgment be rendered in favor of the candidate receiving the requisite plurality of the lawful votes.   In

the case before us, however, one could argue that there is no such conflict. Because no effort was made to determine how the ineligible voters voted in the race for the Village Council, the district court could not actually determine whether the unlawful votes affected the outcome. Although nothing in the record suggests that there would have been any obstacle to proving how the unlawful voters voted, no party attempted to do so. One could therefore argue that Section 3–8–64(A) has no application, and that consequently the district court had to obey the command of Section 3–8–67(B) to reject all the votes in the election.

{20} We cannot accept that argument. As explained above, the district court should avoid rejecting the votes of lawful voters— which is what is required by Section 3–8–67(B)—if there is any alternative. Before a contestant can claim relief under Section 3–8–67(B), the contestant bears the burden of establishing why the district court cannot fairly determine the successful candidates as required by Section 3–8–64(A). If Contestant had demonstrated that it was impossible to show how the election irregularities affected the vote—because, for example, the un-

lawful voters could not be served with subpoenas or refused to testify about how they voted, and there was no available circumstantial evidence regarding how they voted—the court might then proceed in accordance with Section 3–8–67(B). But Contestant made no such showing here. Having failed to establish the need to reject all the votes in the two precincts in the Village election, Contestant is not entitled to demand a new election, or even simply rejection of the May 1996 election.

## CONCLUSION

{21} For the above reasons, we reverse the judgment of the district court and remand for entry of judgment confirming the official results of the Village election.

{22} **IT IS SO ORDERED.**

DONNELLY and ARMIJO, JJ., concur.