1999-NMSC-011

975 P.2d 346

**Ron P. LOPEZ, District Attorney for the Seventh Judicial District, Petitioner,**

v.

**Hon. Edmund H. KASE, III, District Court Judge for the Seventh Judicial District, Respondent,**

and

**Patricia Ann Richardson, Real Party in Interest.**

**No. 25,530.**

Supreme Court of New Mexico.

Feb. 26, 1999.

Ron P. Lopez, District Attorney, Socorro, Petitioner pro se.

Patricia A. Madrid, Attorney General, Andrea Joseph, Assistant Attorney General, Santa Fe, for Respondent.

Martin, Lutz, Roggow & Brower, P.C., William L. Lutz, Hugh T. Brower, Las Cruces, for Real Party in Interest.

## OPINION

FRANCHINI, Justice.

{1} Based on our interpretation of Article VII, Sections 1 and 2 of the New Mexico Constitution and the deference this Court owes the State's executive branch under separation of powers considerations, we determine that Patricia Ann Richardson is lawfully entitled to take office as a Sierra County Commissioner pursuant to her election to that position in November 1998 and the subsequent restoration of her full rights of citizenship by the Governor of New Mexico.

## FACTS and PROCEDURAL POSTURE

{2} On March 17, 1998, Richardson filed a Declaration of Candidacy for the position of Sierra County Commissioner, District No. 2. After winning her party's nomination, Richardson was placed on the General Election ballot and thereafter won election by a large margin. Following consultation with her attorney, and prior to taking office, Richardson sought a Certificate of Restoration of Full Rights of Citizenship (Certificate) from the Governor.

{3} Pursuant to NMSA 1978, § 31–21–17 (1955), the Governor's office requested that the Parole Board investigate and report on Richardson's application for executive clemency. A parole officer confirmed that, as disclosed by Richardson in her application, she had pled guilty in 1971 to False Entries in Bank Records in violation of 18 U.S.C. § 1005 (1948, prior to 1989 and 1990 amendments). The parole officer's report also confirmed that the United States District Court for the District of New Mexico had accepted Richardson's plea, imposing a suspended sentence and two years' probation on her. The report further stated that Richardson, for-

merly a citizen of England, had not sought a pardon from the President of the United States or restoration of her civil rights from the Governor earlier because "she thought all her rights were restored when she was granted citizenship" upon her naturalization in January 1991. We note that when Richardson first registered to vote as a United States citizen in April 1991 she signed a standard voter registration form, certifying her belief that she was "NOT DENIED THE RIGHT TO VOTE BY A COURT OF LAW BY REASON OF LEGAL INSANITY OR FELONY CONVICTION."

{4} In the opinion of the parole officer, "Ms. Richardson paid for her crime twenty-seven (27) years ago. She has no criminal record [since then] and can not be described as a career criminal. She does not minimize her crime in any way and at this point in her life, I don't believe she has any reason to." The parole officer's report noted Richardson's expressed sentiments "that she has nothing to gain by holding office" and that she "would like to give back to the community what the community has given her, but she wants to do so legally." Upon receiving this report from the Parole Board, the Governor issued Richardson a Certificate restoring her rights to vote and to hold office in New Mexico on December 17, 1998.

{5} A few days later, the District Attorney for the Seventh Judicial District in Socorro, New Mexico received an anonymous telephone call informing him of Richardson's felony conviction and her possible ineligibility to vote or hold public office as a result. On December 29, 1998, by facsimile, the District Attorney moved this Court for an emergency writ of prohibition or, alternatively a writ of mandamus, to prevent Richardson from being sworn in as a county commissioner later that day. See Rule 12–504 NMRA 1999 (providing for extraordinary writs). The District Attorney also requested a stay of Richardson's swearing-in ceremony, which this Court granted pending oral argument. Following oral argument on January 11, 1999, this Court orally denied the District Attorney's petition and lifted the stay. We now issue this written opinion to set forth our rationale for that decision. See Rule 12–405 NMRA 1999 (providing for publication of decisions involving issues of first impression).

*DISCUSSION*

{6} Before reaching the merits of the District Attorney's petition, we address Richardson's argument that the petition should be denied on the grounds that the District Attorney has an adequate remedy at law. Richardson is correct that this Court generally will not grant equitable relief by way of an extraordinary writ when there is an adequate remedy available to the petitioner at law, absent unusual and compelling circumstances. See Carter v. Montoya, 75 N.M. 730, 733, 410 P.2d 951, 953 (1966). See also State ex rel. Clark v. Johnson, 120 N.M. 562, 569, 904 P.2d 11, 18 (1995) (discussing grounds for issuing a writ of mandamus); District Court v. McKenna, 118 N.M. 402, 405, 881 P.2d 1387, 1390 (1994) (discussing grounds for issuing a writ of prohibition). See generally Charles T. Dumars and Michael B. Browde, Mandamus in New Mexico, 4 N.M.L.Rev. 155 (1974); Richard C. Bosson & Steven K. Sanders, The Writ of Prohibition in New Mexico, 5 N.M.L.Rev. 91 (1974). New Mexico law affords at least two statutory alternatives for removal of an elected official from office. See NMSA 1978, §§ 10–4–1 to 10–4–29 (1909) (providing for removal of local officers); NMSA 1978, §§ 44–3–1 to 44–3–16 (1919) (outlining quo warranto procedure).

{7} We recognize that the foregoing statutory remedies appear on their face to apply solely to sworn incumbents, and therefore were probably not properly available to the District Attorney before Richardson took office. However, we also recognize that strong policy considerations weigh against our issuing a writ of prohibition or mandamus once an election has taken place. See Darr v. Village of Tularosa, 1998–NMCA–104, ¶ 17, 125 N.M. 394, 962 P.2d 640 (noting "the 'well-established policy in New Mexico that '. . . seeks to give effect to the express will of the electorate'" (quoted authorities omitted)); Jaramillo v. State ex rel. Board of County Comm'rs, 32 N.M. 20, 31–32, 250 P. 729, 733 (1926) (observing necessity that public offices be filled so that public business can be transacted and rejecting use of mandamus

to vacate a contested office). While we are inclined to think that a post-election petition for an extraordinary writ is generally less likely to present a compelling need for immediate relief in this Court than a pre-election petition, *cf. State ex rel. Chavez v. Evans,* 79 N.M. 578, 582–83, 446 P.2d 445, 449–50 (1968) (approving, in a *pre-election* petition for mandamus, removal from the ballot of a candidate with an unpardoned felony conviction), we do not resolve the matter on that basis. We do not want to foreclose post-election, pre-installation relief in this Court by extraordinary writ in future cases with more compelling merits. For this reason and because the merits of this petition can be so easily and expeditiously resolved, we decide this case on the substantive arguments presented to us by the parties instead of requiring them to begin anew in district court. *Cf. Thompson v. Legislative Audit Comm'n,* 79 N.M. 693, 694–95, 448 P.2d 799, 800–01 (1968) (noting "necessity of an early decision" as a factor in reaching merits of a mandamus petition).

{8} Richardson contends, as she suggested to the parole officer, that her naturalization, in addition to granting her United States citizenship, had the effect of automatically conferring on her the right to vote and the right to hold office in New Mexico. She is incorrect. While naturalization of United States citizens lies within the exclusive province of the federal government, *see* 8 U.S.C. § 1421 (1994); *cf. Sudomir v. McMahon,* 767 F.2d 1456, 1464 (9th Cir.1985) (noting that "federal authority in the areas of immigration and naturalization is plenary"), the United States Constitution allows states to prohibit persons convicted of crimes from voting or holding state or local offices. *See* U.S. Const. amend. XIV, § 2; *Richardson v. Ramirez,* 418 U.S. 24, 41–56, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) (holding that provision in California Constitution barring convicted felons from voting after they completed their sentences did not violate the federal equal protection clause). Thus, whether Richardson is qualified to hold the office of Sierra County Commissioner is a question of state law not federal law.

{9} Article VII, Section 2(A) of the New Mexico Constitution provides: "Every citizen of the United States who is a legal resident of the state *and is a qualified elector therein,* shall be qualified to hold any elective public office except as otherwise provided in this constitution." (Emphasis added.) Section 1 of Article VII disqualifies as electors "persons convicted of a felonious or infamous crime unless restored to political rights." *See also* NMSA 1978, § 31–13–1(A) (1963) ("Any person who has been convicted of a felony shall not be permitted to vote in any election held pursuant to the laws of the state or any subdivision thereof, nor shall such person be permitted to hold any office of public trust for the state or any subdivision thereof."); NMSA 1978, § 10–1–2 (1912) ("No person convicted of a felonious or infamous crime, unless such person has been pardoned or restored to political rights, shall be qualified to be elected or appointed to any public office in this state."). Article V, Section 6 states that "the governor shall have power to grant reprieves and pardons." *See also* NMSA 1978, § 31–13–1(C) (1963) ("The disability imposed by this section may only be removed by the governor.").

{10} Preliminary to our analysis, we note that the District Attorney does not seek to nullify Richardson's vote (assuming she voted) in the November 1998 election, which he concedes she won handily. Rather, Petitioner contests Richardson's right to take office, on the assumption that if she was not qualified to vote in the November 1998 election, she is not qualified to take office under Article VII, Section 2(A). Article VII, Section 2(A), however, does not specify a time period before taking office by which an elected official must be qualified to vote.

{11} We see no reason to suppose, as the Attorney General does, that to hold office an elected official must be qualified to vote by the date of the election next preceding his or her swearing-in ceremony. Interpreting a different passage in our Constitution that relates to the requirements for holding a judicial office, Article VI, Section 8, this Court reasoned quite simply that "[t]o 'hold' [a judicial] office, one must take the oath of office." *Chavez v. Yontz,* 104 N.M. 265, 266, 720 P.2d 300, 301 (1986). We concluded, therefore, that one need not meet the requirements for holding a judgeship until one

was about to become a judge, in other words, "at the time of taking office." *Id.* This conclusion accords with the general rule around the country regarding other public offices and when eligibility for taking office must be established. *See, e.g. Cox v. Starkweather,* 128 Colo. 89, 260 P.2d 587, 591 (1953); *State ex rel. Dostert v. Riggleman,* 155 W.Va. 808, 187 S.E.2d 591, 595 (1972). *See generally* 67 C.J.S. *Officers and Public Employees* § 18 (1978). Interestingly, while it is the province and duty of the judiciary "to say what the law is," *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177–79, 2 L.Ed. 60 (1803), we note that the Legislature has reached the same conclusion with respect to holding public office in New Mexico. NMSA 1978, § 1–8–29 (1993) requires a candidate for any state or local office to swear on his or her Declaration of Candidacy: "I will be eligible and legally qualified to hold this office *at the beginning of its term.*" (Emphasis added.) We conclude that Richardson became eligible to hold office when, prior to taking the oath of office, she received the Governor's Certificate.

{12} Our conclusion is informed by separation of powers considerations related to the role of the Governor in restoring political rights to citizens of this state. As noted above, Article V, Section 6 empowers the executive branch of state government, not this Court or the Legislature, with clemency authority. If this Court were to grant the District Attorney's petition under the circumstances presented here, we would effectively void the Certificate the Governor gave Richardson. Because Article VII, Section 2(A) is silent on when requirements for holding office must be met and does not expressly limit the Governor's clemency authority, we conclude that voiding the Governor's certificate in this manner would be an unwarranted intrusion on the Governor's constitutional prerogative to restore Richardson's civil rights. Other courts have reached the same conclusion in somewhat similar circumstances. *See People ex rel. Symonds v. Gualano,* 124 Ill.App.2d 208, 260 N.E.2d 284, 290 (1970) ("It was the manifest purpose of those who designed our constitutional framework to give the governor full and untrammeled discretion in ... restoring the rights of citizenship."); *see also State v. Mangino,* 17 N.J.Super. 587, 86 A.2d 425, 427 (1952) (holding that "executive clemency is exclusively the Governor's province" and that it "is not reviewable by any court").

{13} Finally, we feel constrained to state that this Court will not tolerate election fraud. *See Thompson v. Robinson,* 101 N.M. 703, 705, 688 P.2d 21, 23 (1984) (affirming district court's removal of plaintiff from election ballot, where plaintiff "intentionally concealed his actual residence ... [in] a deliberate attempt to evade the fundamental eligibility requirements expressly provided by our constitution and statutes"). The District Attorney suggests there is something sinister in the fact that Richardson certified on her voter registration form her belief that she was not denied the right to vote and also that she failed to check the box on the same form to indicate she was a naturalized citizen. New Mexico law provides ample protection against election fraud. *See, e.g.,* NMSA 1978, § 1–8–40 (1993) (prescribing felony penalty for "knowingly making a false statement in [a] declaration of candidacy"); NMSA 1978, § 1–20–3 (1993) (making it a felony to "willfully and with knowledge and intent to deceive ... sign a certificate of registration when not a qualified elector"); NMSA 1978, § 1–20–10 (1969) (mandating felony punishment for "taking any oath required by the Election Code with the knowledge that the thing or matter sworn to is not a true and correct statement"). We are not persuaded that the District Attorney's "evidence" regarding Richardson's alleged state of mind is compelling enough for us to interfere now, at the highest appellate level, with the normal trial procedures for proving and punishing election fraud as provided for in the foregoing statutes.

*CONCLUSION*

{14} For the reasons discussed above, the District Attorney's petition is denied.

{15} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, SERNA, and MAES, JJ., concur.